**BLUE CROSS AND BLUE SHIELD OF MICHIGAN, a Michigan non-profit corporation, Plaintiff–Appellant,**

v.

**David KAMIN, Defendant–Appellee.**

No. 87–1955.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted April 21, 1989.

Decided June 5, 1989.

Lisa M. Varnier, Richard T. Theisen (argued), Detroit, Mich., for plaintiff-appellant.

David Kamin, Southfield, Mich., pro se.

Before WELLFORD and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Blue Cross and Blue Shield of Michigan (Blue Cross), filed a civil RICO action against defendant, David Kamin. 18 U.S.C. §§ 1962(c) and 1964(c). Prior to this civil action being filed, Kamin, a chiropractor, had been convicted of criminal mail fraud in a prosecution stemming from fraudulent billings made by Kamin to Blue Cross. In the civil RICO action filed in November 1985, Blue Cross sought to recover $492,366.30 in actual damages sustained as a result of Kamin's fraudulent submissions. After the usual discovery and pretrial procedures were completed, the case, in July 1987, was put on "standby" for trial. On August 26, 1987, the trial judge, *sua sponte,* issued an order dismissing the case. The trial court's action was predicated on the much discussed footnote 14 in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985). The trial court found that *Sedima* dictated that "two or more acts of racketeering alone do not establish a pattern; the factors of continuity and relationship must also be present." The court then concluded relative to the Blue Cross complaint that "[w]hile the 'relationship' element is satisfied, the court finds that plaintiff has failed to allege the 'continuity' necessary to state a claim under RICO." At the time the trial court made its ruling, no motions were pending and the parties had both agreed in the final joint pretrial statement that jurisdiction was proper.

On appeal, Blue Cross argues that it set forth facts sufficient to plead a pattern of

racketeering within the purview of 18 U.S. C. § 1961, *et seq.*[1] We agree and reverse and remand for further proceedings.

## I.

18 U.S.C. § 1962(c) reads in relevant part:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

18 U.S.C. § 1961(5) provides that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity...."

It is undisputed that mail fraud, 18 U.S. C. § 1341, is a "racketeering activity" within the definition of 18 U.S.C. § 1961(1).

In this RICO civil complaint, Blue Cross set forth in detail two separate schemes devised by Kamin to bilk Blue Cross. In the first scheme alleged, Kamin would provide bogus work-excuse slips for employees who needed medical verification to justify an absence from work. In return for the slips, the employee would either be put through unnecessary medical tests for which Blue Cross was billed, or in some cases Blue Cross would just be billed for tests and services never given.

Kamin's second scheme involved running newspaper ads offering to pay laid-off auto workers $7.00 per hour if they would come in and participate in a "health survey." The "survey" consisted of running the workers through a battery of tests, for which there was no medical need or justification, and then billing Blue Cross for the tests. The trial court concluded that these two schemes were really only one scheme, i.e., a scheme to defraud Blue Cross by receiving payments for unnecessary medical and diagnostic tests.

---

1. Kamin, who was sent to prison following his federal conviction, has not filed a brief or otherwise challenged Blue Cross' contentions on appeal. He has been represented by counsel, however.

## II.

■ There are now a plethora of cases dealing with what constitutes a "pattern of racketeering" activity. Little would be served by an exhaustive review of these cases. Suffice it to say that the cases run the gamut from requiring two or more truly different and distinct schemes (such as the trial court did here)[2] to a very broad, literal approach which would hold any two separate racketeering acts to be the necessary predicate.[3] Our circuit, perhaps hoping that Congress will clarify the issue, has not really spoken definitively on this issue.[4] We decline to make this case the vehicle for such exposition as we see this as a clear case. This is not a situation, for example, where a plaintiff is trying to turn a simple breach of contract case into a RICO claim. Here the plaintiff was the victim of literally hundreds of separate acts of mail fraud. As we read the statute, we do not believe that Congress intended that one could insulate himself from the reach of RICO simply by repeatedly bilking the same victim.[5] We agree with the Seventh Circuit that:

> [T]he proposition that the predicate acts must always occur as part of separate schemes in order to satisfy the continuity aspect of the pattern requirement focuses excessively on continuity, and therefore cannot be accepted as a general rule. Otherwise defendants who commit a large and ongoing scheme, albeit a single scheme, would automatically escape RICO liability for their acts, an untenable result.

*Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986).

The "pattern" issue is exacerbated when mail fraud is the predicate offense. For example, if one devises a scheme to file a false insurance claim relating to an allegedly stolen automobile, and causes a letter to be mailed to the police and to the insurance company, each letter may be the basis for a separate count of mail fraud in a criminal prosecution. There is clearly only one scheme to defraud, however, and these facts should not support a civil RICO claim. However, if the same person owns ten automobiles and fraudulently tries on ten different occasions to collect from the insurance company on each car, there would be ten schemes, not one, notwithstanding that the insurance company was the victim in each case and the *modus operandi* of the wrongdoer was the same in each case. Such facts would support a civil RICO claim.

■ In the case at bar, each false claim submitted to Blue Cross by Kamin involved a separate and distinct insured. Each claim was complete unto itself and did not rely or depend on any of the other claims. Each claim involved at least one mailing, so the mail fraud ("racketeering") predicate is established for each claim. The claims were submitted over a protracted period of time which was open-ended.[6] Indeed, if he had not been caught, there is no reason to believe Kamin would not still be submitting false claims. The amount of money received from the payment of the false claims represented a substantial portion of

---

**2.** *See, e.g., Flip Mortgage Corp. v. McElhone,* 841 F.2d 531 (4th Cir.1988).

**3.** *See, e.g., Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187 (9th Cir.1987).

**4.** Consistent with the conclusion reached in this opinion, however, is our earlier opinion in *Hospital Employees' Local 79 v. Mercy–Memorial Hospital Corp.,* 862 F.2d 606, 609 (6th Cir.1988), where the court stated:

> The complaint alleges two predicate acts of bribery as separate and independent wrongs. The fact that an employer has one overall purpose to get rid of a union does not conflate all of its alleged wrongful acts over a long period of time into only one RICO event. The

> two acts as alleged are independent and constitute two separate predicate acts under RICO.

**5.** We note also that whereas in most civil RICO cases the plaintiff merely alleges that the defendant has been involved in a "racketeering activity," here the defendant was criminally convicted of the predicate offenses before the civil RICO action was started.

**6.** "In our opinion the law is that a pattern may be evinced by a single scheme which is open-ended." *Smith v. MCI Telecommunications,* 124 F.R.D. 665 (D.C.Kan.1989).

Kamin's income. This would certainly seem to constitute a "person employed by or associated with any enterprise ... conduct[ing] ... such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).[7]

We note, finally, that Blue Cross, not unmindful of the controversy in the circuits over what constitutes a "pattern of racketeering activity," specifically framed its pleadings so that two separate and distinct *schemes* were alleged. Thus, even if one were to adopt the more restrictive view of RICO enunciated by some of the circuits, Blue Cross would have stated a claim. This becomes particularly relevant in light of the district court's *sua sponte* dismissal of the complaint. Although the district court did not indicate any specific rule of civil procedure under which it acted, it dismissed on the pleadings for "fail[ure] to state a claim for relief under RICO." A complaint can be dismissed for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with plaintiff's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Although, as indicated, we do not believe it was necessary under these facts for Blue Cross to plead in the manner it did, at a minimum it deserved the opportunity to prove the separate schemes alleged.

REVERSED and REMANDED.

---

**7.** No questions concerning the "enterprise" aspects of Kamin's business or its effect on interstate commerce are implicated in this appeal.